FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 14 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **TENA EVANS BODRICK,** | ) | Chapter 7 |
| | ) | Case No. 14-31516 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| **KIMBERLY WRIGHT,** | ) | Chapter 13 |
| | ) | Case No. 14-31542 |
| Debtor. | ) | |
| _____ | ) | |

## ORDER SANCTIONING KATRINA BURTON FOR NEGLIGENTLY AND FRAUDULENTLY PREPARING BANKRUPTCY PETITIONS AND ENGAGING IN THE UNAUTHORIZED PRACTICE OF LAW

**THIS MATTER** is before the court on its Order Requiring Katrina Burton to Appear and Show Cause entered on November 3, 2014 in the Wright case ("Wright Show Cause Order") and its Order Requiring Katrina Burton to Appear and Show Cause entered on December 3, 2014 in the Bodrick case ("Bodrick Show Cause Order"). The court held a hearing on the Wright Show Cause Order on November 25, 2014, and the Debtor, Kimberly Wright ("Wright"); Katrina Burton ("Burton"); an attorney for the

Chapter 13 Trustee; and attorneys for the Bankruptcy Administrator appeared at the hearing. The court held hearings on the Bodrick Show Cause Order on January 15, 2015 and March 20, 2015. The Debtor, Tena Evans Bodrick ("Bodrick"); Burton; the Chapter 7 Trustee; and the Bankruptcy Administrator appeared at both hearings on the Bodrick Show Cause Order. The evidence collected at the hearings shows, as explained in more detail below, that Burton flagrantly disregarded the requirements of 11 U.S.C. § 110 governing the activities of bankruptcy petition preparers ("BPPs") and was in fact engaged in the unauthorized practice of law in the Wright and Bodrick bankruptcy cases.

### PROCEDURAL HISTORY AND FINDINGS OF FACT

1.    This matter first came to the court's attention at the hearing on Wright's "Motion to Reconsider Order of Dismissal" ("Reconsideration Motion"). Wright filed the Reconsideration Motion pro se on October 10, 2014 after the court dismissed her case on October 7, 2014. The court held a hearing on the Reconsideration Motion on October 29, 2014. At the hearing, Wright testified that Burton helped her file a previous bankruptcy case, Chapter 7 case no. 12-30262, for a fee of $1200.[1] When she later encountered Burton while working as a hairdresser, Wright mentioned that she was having financial difficulty and might need to file bankruptcy, and Burton offered

---

[1] None of the documents filed in case no. 12-30262 disclose Burton's involvement in the case.

to help.   Wright testified that Burton charged her $584 for
helping with her new Chapter 13 case[2] and that Burton told her
that a BPP was an attorney.   Wright said that the signatures on
her Voluntary Petition, her Application for Individuals to Pay
the Filing Fee in Installments, her creditors' matrix, her
Notice to Consumer Debtor(s) under §342(b) of the Bankruptcy
Code ("§ 342 Notice"), and her "Ex-Parte Motion to Extend Time
to File Debtor's Schedules and Statements" were not her own.
Wright testified that she had not even seen the § 342 Notice
until the October 29 hearing.   Wright also said that Burton was
supposed to finish filing her schedules and statements but did
not and that Burton even prepared the Reconsideration Motion.
The Bankruptcy Administrator told the court at the hearing that
she believed Burton had served as a BPP in other cases in this
district without disclosing her involvement.

    2.   As a result of Wright's testimony and the Bankruptcy
Administrator's allegations, the court entered the Wright Show
Cause Order and set a hearing on November 25, 2014.   The court
also heard the November 4, 2014 Motion for Order Requiring
Debtor to Appear and for Turnover of Documents filed jointly by
the Bankruptcy Administrator and the Chapter 7 Trustee in
Bodrick's case at the November 25 hearing.   At the hearing, the
Bankruptcy Administrator elicited testimony from Carrie Howey

---

[2] None of the documents filed in case no. 14-31542 disclose Burton's
involvement in the case.

("Howey"), an employee of this court.   Howey testified that she recognized Burton from her visits to the court in relation to three previous bankruptcy cases that Burton filed on her own behalf, that Burton filed several documents in Bodrick's case including the Voluntary Petition, and that Burton filled out the court's Contact Information for Pro Se (Non-Attorney) Filers form with Bodrick's information and signature.

3.   Matthew T. McKee ("McKee") of the Rogers Townsend & Thomas ("RTT") law firm also testified at the hearing. According to McKee, Burton worked at RTT until shortly after the Bankruptcy Administrator brought the Wright Show Cause Order to his attention.   After reviewing the Wright Show Cause Order, McKee began an investigation of Burton's work for the law firm that included reviewing the emails that Burton had previously sent while at work.   McKee testified that RTT maintained the emails as part of its business records (although the emails relevant to this matter did not discuss RTT business).   McKee found an email from Burton to Bodrick dated March 5, 2014 that states that Burton "intend[ed] to walk [Bodrick] through this [bankruptcy] process," invites Bodrick to ask any questions, and says Burton "charge[s] a separate fee for any additional motions/reaffirmation agreements."   An email dated September 25, 2014 from Burton to Bodrick says Burton was charging an extra fee to "accommodate for the Judgment Liens we need to get

removed during your bankruptcy." In an email dated October 2, 2014, Burton tells Bodrick that previously filing her tax return jointly with her husband will not be a problem and that "[i]f it comes up, [Bodrick should say her] situation is different today and you all are separated." Burton's October 6, 2014 email says Burton needs Bodrick's paystubs. A different email, from Burton to Wright on April 16, 2013, includes an attached letter to T.R. Lawing Realty Inc. ("Lawing") that was prepared by Burton.[3] The letter makes legal arguments about the impact of a bankruptcy case on the debtor's lease with Lawing and cites 11 U.S.C. § 524 and Federal Rule of Bankruptcy Procedure 4008.

4.    Burton also testified at the November 25, 2014 hearing. Burton admitted that she failed to disclose her role and the fees she charged in Wright's cases and Bodrick's case. She explained that she concealed her role in Wright's second case due to her concerns about Wright's good faith because Wright omitted her hairdressing income from her bankruptcy schedules. Burton said she charged a higher fee for Chapter 13 cases because they required her to do more work and she charged Wright an even higher fee of $584 because Wright "just gave [Burton] her bills and she did nothing else." Burton admitted that she signed Wright's name on her bankruptcy documents[4] and

---

[3]  The email says Burton left off the signature page of the attached letter and tells Wright to add her signature if she sends the letter to someone.
[4]  Burton admitted to signing Wright's name on the Voluntary Petition, the § 342 Notice, the Certification of Notice to Consumer Debtor(s) Under

filed documents with the court for Wright.  She also admitted that she prepared the Reconsideration Motion and signed Wright's name on it.  Burton said she provided a copy of the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer ("BPP Notice") to Wright in her first case but admitted she did not provide the BPP Notice in her second case.  Burton claimed that the Lawing letter was composed by her and Wright and noted that she understood legal terms better than Wright.  Burton admitted that she may have advised Wright that a Chapter 13 could help prevent an eviction.  When asked about designating Wright's lease as a "910/365" claim in her Chapter 13 Plan and whether the designation was Wright's decision, Burton said, "If I'm a petition preparer, I use my knowledge to put things where I think they should go.  I don't ask her."

5.   The court held a hearing on the Bodrick Show Cause Order on January 15, 2015.  At the hearing, Burton objected to the introduction of the RTT emails because she had not had an opportunity to review the emails and was not served with a copy of the subpoena that the Bankruptcy Administrator sent to McKee. The court continued the hearing to allow Burton an opportunity to review the emails.  McKee authenticated the emails as RTT's business records before the hearing concluded.

---

§ 342(b) of the Bankruptcy Code, the Exhibit D — Individual Debtor's Statement of Compliance with Credit Counseling Requirement, and the list of creditors.  Burton claimed that Wright subsequently signed copies of the documents but never provided the signed copies to Burton.

6.    The court conducted a continued hearing on the Bodrick
Show Cause Order on March 20, 2015.  Bodrick testified that she
met Burton a couple of years earlier through their husbands,
that she knew Burton was a paralegal, and that Burton offered to
assist her with a bankruptcy case.  Bodrick said she paid Burton
$400 for her help with this case and also gave Burton funds to
pay court costs.  Bodrick told the court that she did not sign
her name or put her initials on most of the bankruptcy documents
filed in this case, including her creditors' matrix, her
"Request for Order Allowing Extension to File Schedules and
Statements" ("Extension Motion"), her Chapter 7 Statement of
Current Monthly Income and Means-Test Calculation, her Statement
of Financial Affairs, her Chapter 7 Individual Debtor's
Statement of Intention ("Statement of Intention"), and her
Summary of Schedules.  Bodrick said she gave Burton permission
to sign her name, did not give anyone else the same authority,
and assumed Burton signed the filed documents.  Most of the
filed documents, including the Voluntary Petition, the
Application for Individuals to Pay the Filing Fee in
Installments, the Extension Motion, the Statement of Intention,
and the Summary of Schedules, were not filed with the court by
Bodrick, and Bodrick assumed that Burton filed them.

7.    Bodrick admitted that she lied at her initial § 341
meeting of creditors by denying Burton's involvement in this

case and said she did so on Burton's advice. After the § 341 meeting, the Debtor tried to get out of this bankruptcy case by filing her "Debtor's Motion to Dismiss Bankruptcy Case" ("Motion to Dismiss") on November 24, 2014. According to Bodrick, Burton told her to file the Motion to Dismiss and what it should contain. Bodrick said Burton explained lien avoidance to her and told her that filing the Statement of Intention would allow her to keep her house.

8. Burton also testified at the March 20 hearing. Burton admitted that she helped Bodrick with her bankruptcy and said that she did not disclose her role[5] because she knew that Bodrick was not disclosing all of her property. Burton admitted that she was not listed on Bodrick's Statement of Financial Affairs despite receiving $400 for her work; that she filed some of Bodrick's documents with the court; that she signed Bodrick's name on her list of creditors, her Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, her Statement of Financial Affairs, and her Statement of Intention; that she sent emails about the topics in the RTT emails (while claiming she could not be sure that the printed version of the emails introduced into evidence had not been altered in some way); and that she did not give Bodrick the written BPP notice required by 11 U.S.C. § 110(b)(2)(A) (although Burton claimed to have

---

[5] None of the documents filed in case no. 14-31516 disclose Burton's involvement in the case.

notified Bodrick that she was not a lawyer and about the role of a BPP verbally). Burton admitted that she paid some of Bodrick's filing fee to the court before claiming that she was not sure whether she did or not. Burton also said that Bodrick was interested in avoiding liens on her real property and that she offered to prepare documents to do so for $75. In sum, Burton conceded that she was "lax" about observing the statutory requirements for BPPs.

9. The court credits the testimony of all of the witnesses, including the Debtors, with the exception of Burton. While the Debtors may have made some false statements earlier in their cases (such as Bodrick's admission that her testimony at her § 341 meeting was not true), the court believes they testified honestly at the hearings discussed in this order. Burton's testimony, however, was self-serving and difficult to believe. Burton wanted to admit as little as possible (although she did admit certain actions, perhaps without recognizing the legal consequences, when faced with overwhelming evidence) and to explain away any possible wrongdoing. Burton contested many issues (even claiming Fifth Amendment protection against self-incrimination when asked about her involvement in other bankruptcy cases)[6] and gave explanations for her actions that were questionable at best.

---

[6] Burton did not answer any questions about her involvement in other bankruptcy cases after "taking the Fifth," and this order is based entirely on her actions in the Wright and Bodrick cases.

10.    The    Bankruptcy    Administrator    pointed    out    a    good
example   of   Burton's   illogical   explanations   at   the   March   20
hearing:   Burton   claims   to   have   concealed   her   role   in   the
Debtors'   cases   because   she   believed   the   Debtors   were   not
operating  in  good  faith  and  were  failing  to  disclose  all  of
their  assets  and  income  to  the  court,  but,  instead  of  alerting
the   court   about   the   lack   of   good   faith   and/or   refusing   to
continue  to  help  the  Debtors,  Burton  subsequently  completed  the
Debtors'  filings,  brought  the  documents  to  the  court  for  filing,
signed  the  Debtors'  names  on  various  documents,  and  continued  to
advise  the  Debtors.    Burton  wants  the  court  to  believe  that  her
covert   activities   were   the   result   of   the   Debtors'   wrongdoing
while   admitting   that   she   continued   to   assist   the   Debtors   in
their  alleged  bankruptcy  fraud.    To  accept  her  testimony  about
her  reasoning  as  true  requires  a  suspension  of  disbelief.

## CONCLUSIONS OF LAW

11.    The  Bankruptcy  Code  allows  BPPs  to  assist  debtors  in
preparing   documents   for   filing;   however,   the   Code   also
significantly  regulates  the  acts  of  BPPs  and  provides  severe
penalties  for  violations.    11  U.S.C.  § 110;  see also  In re
Evans,  413  B.R.  315,  320—23  (Bankr.  E.D.  Va.  2009)  (rejecting
argument  that  § 110  violates  the  Fifth  Amendment);  In re Moore
(Moore  I),  283  B.R.  852,  856—57  (Bankr.  E.D.N.C.  2002)
(determining bankruptcy courts have constitutional authority and

subject matter jurisdiction to enforce the provisions of § 110).
A BPP is "a person, other than an attorney for the debtor or an
employee of such attorney under the direct supervision of such
attorney, who prepares for compensation a document for filing,"
§ 110(a)(1), and a "document for filing" is "a petition or any
other document prepared for filing by a debtor in a United
States bankruptcy court or a United States district court in
connection with a case under this title," § 110(a)(2).  Before
discussing the specific provisions and restrictions of § 110, it
is important to understand a simple fact that eluded Burton: a
BPP who observes the requirements of § 110 is a typist; he is
not an attorney, and he is not even a paralegal.[7]  Wieland v.
Assaf (In re Briones-Coroy), 481 B.R. 685, 690 (Bankr. D. Colo.
2012) (" '[B]ankruptcy petition preparers' can only provide
typing, data entry and photocopying services to persons who have
already decided to file bankruptcy."); U.S. Trustee v. Brown (In
re Martin), 424 B.R. 496, 505 n.6 (Bankr. D.N.M. 2010) ("In
reality a BPP is permitted by state law to do little more than
provide the forms that are freely available from the Clerk's
office and the internet, and to serve as a typist to fill out
those forms as dictated by the debtor."); In re Moore (Moore
II), 290 B.R. 287, 297—98 (Bankr. E.D.N.C. 2003); In re Bush,
275 B.R. 69, 78 (Bankr. D. Idaho 2002); Stiles v. C.C. Bankhead,

---

[7] See also infra ¶16.

III Living Trust (In re Young), Nos. 98-3115 & 98-30735, slip op. at 15 (Bankr. W.D.N.C. Apr. 27, 1999) (discussing guidelines for "typing services" established by the Bankruptcy Court for the Southern District of Florida (citing In re Bachmann, 113 B.R. 769, 774 (Bankr. S.D. Fla. 1990))).   The legislative history of § 110 confirms the conclusions of the courts cited above: "While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors."   H.R. REP. No. 103-835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, at 3365, 1994 WL 562232, at *56; see also In re Monson, 522 B.R. 340, 347 (Bankr. D. Utah 2014) ("Congress's intent is clear: bankruptcy petition preparers are forbidden from performing all but a select few tasks for potential debtors.").

12.  Section 110 provides specific requirements for BPPs and "narrowly circumscrib[es] permissible activities."   In re Schneider, 271 B.R. 761, 765 (Bankr. D. Vt. 2002).   A BPP must disclose his role in a debtor's case and include his name, address, and Social Security number on every document he files. § 110(b)(1) & (c).   A BPP must disclose to the debtor in writing that she is not an attorney and is not able to provide legal advice.   § 110(b)(2); In re Hennerman, 351 B.R. 143, 149-50 (Bankr. D. Colo. 2006).   A BPP cannot file documents without

providing a copy to the debtor, § 110(d), or sign documents on the debtor's behalf, § 110(e)(1). A BPP cannot collect money from a debtor to pay the debtor's filing fee, § 110(g); Briones-Coroy, 481 B.R. at 717—18, and some courts have concluded that § 110(g) prohibits a BPP from even handling and delivering a money order from the debtor made out to the bankruptcy court, see, e.g., In re Doser, 281 B.R. 292, 312 (Bankr. D. Idaho 2002). A BPP must disclose any fee that he charges, and his fee cannot exceed the value of the services rendered. § 110(h). A BPP cannot practice law or give any legal advice, § 110(e)(2) & (k), and § 110(e)(2)(B) includes a non-exhaustive list of examples of legal advice that BPPs cannot provide, U.S. Trustee v. McIntire (In re Sanchez), 446 B.R. 531, 538 (Bankr. D.N.M. 2011).

13. Section 110 of the Bankruptcy Code also provides penalties for violations of its various requirements. The court can order a BPP who charges an unreasonable fee or violates § 110 to forfeit her fee. § 110(h)(3). If a BPP violates § 110 or commits any fraudulent, unfair, or deceptive act, the court can require the BPP to pay the debtor's actual damages, the greater of $2000 or double the fee charged by the BPP, and attorney's fees and costs to the debtor. § 110(i). The court can enjoin a BPP from further violations of § 110 or from serving as a BPP in future cases. § 110(j). A BPP who violates

§ 110(b), (c), (d), (e), (f), (g), or (h) may be fined $500 for each violation, and the court must triple the total fine in certain circumstances, including where a BPP fails to disclose her identity. § 110(l); Martin, 424 B.R. at 509. The total amount of sanctions allowed under § 110 for egregious violations can add up to a significant amount of money. See McDow v. Mayton, 379 B.R. 601, 607—08 (E.D. Va. 2007) (concluding that a BPP was liable for a maximum sanction of $45,875 (but only sanctioning the BPP in the total amount of $3375)); In re Branch, 504 B.R. 634, 649 (Bankr. E.D. Cal. 2014) (imposing sanctions totaling $40,550 against a BPP). In addition to the financial penalties, BPPs who violate the Bankruptcy Code and/or orders of a bankruptcy court can be referred to the United States Attorney and/or the United States District Court for criminal proceedings. See In re Seehusen, 273 B.R. 636, 646—47 (Bankr. D. Colo. 2001).

14. The evidence introduced at the various hearings discussed in this order shows that Burton served as a BPP in these cases and violated almost every provision of § 110. Burton admitted to many violations of § 110 and appears to be liable for many more. Burton charged excessive fees, see Evans, 413 B.R. at 329 (reducing a BPP's fee from $700 to $160); Moore I, 283 B.R. at 859 (reducing fee from $199 to $80); Doser, 281 B.R. at 314, 318 (reducing $199 fee to $90); Bush, 275 B.R. at

71, 86 (concluding that a BPP's fee of $150 was unreasonable),
without disclosing the fees to the court. Burton did not
provide the written notice required by § 110(b)(2). Burton paid
the Debtors' filing fees in violation of § 110(g). The record
includes numerous documents containing fraudulent signatures of
the Debtors' names by Burton in violation of § 110(e)(1) and
documents that were not provided to the Debtors prior to filing
in violation of § 110(d). Burton did not disclose her role in
these cases in any of the numerous filed documents, and she was
supposed to disclose her activities in every one,
§ 110(b)(2)(B); Mayton, 379 B.R. at 605—06. Burton even
encouraged the Debtors to commit perjury. See supra ¶¶ 3, 7.

15. Burton also flagrantly violated the § 110(e)(2)(A)
prohibition against a BPP offering legal advice to a debtor. In
addition to the authority under § 110(e)(2)(A), the court has
the inherent right to regulate the practice of law before it,
Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (citing Ex parte
Burr, 22 U.S. (9 Wheat.) 529, 531 (1824)). Section 110(e)(2)(B)
contains specific examples of topics that constitute legal
advice that BPPs cannot provide to their clients, and courts
generally look to state law to determine what constitutes the
unauthorized practice of law, Bachmann, 113 B.R. at 772. North
Carolina General Statute § 84-4 forbids the practice of law, the
preparation of legal documents, and the dissemination of legal

advice by any person who is not an active member of the Bar of the State of North Carolina.

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, *the preparation and filing of petitions for use in any court*, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and *to advise or give opinion upon the legal rights of any person, firm or corporation*: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition.

N.C. Gen. Stat. § 84-2.1 (emphasis added). If not for the extremely limited authority granted to BPPs by § 110, even preparing a bankruptcy petition would constitute the unauthorized practice of law in North Carolina. Moore II, 290 B.R. at 297. Therefore, any act by a BPP that exceeds the authority of § 110 most likely involves the unauthorized practice of law. See N.C. Gen. Stat. § 84-2.1; Hennerman, 351 B.R. at 151 (concluding that the prohibition on BPP advice

regarding bankruptcy procedures and rights is "extraordinarily broad").

16. Given the extremely limited role of a BPP under § 110 and the relevant North Carolina statutes, most of Burton's actions in this case involved the unlawful practice of law instead of the legitimate work of a BPP. See Mayton, 379 B.R. at 605 (noting the multiple ways that a BPP provided unauthorized legal advice). Burton apparently told Wright that a BPP was an attorney. Even if Wright misunderstood Burton, Burton does identify herself as a paralegal, and BPPs cannot use the word "legal" in advertising their services. § 110(f) ("A bankruptcy petition preparer shall not use the word 'legal' or any similar term in any advertisements . . . ."); Bush, 275 B.R. at 82–83; In re Gomez, 259 B.R. 379, 385 (Bankr. D. Colo. 2001) ("The use of the word 'paralegal' violates the letter and spirit of § 110(f)."); Bachmann, 113 B.R. at 774 (enjoining BPP from using "paralegal" on his business cards). Her involvement in the preparation of the Debtors' Voluntary Petitions and schedules, such as offering to "walk [Bodrick] through this process," charging Wright an additional fee because all Wright did was give Burton her bills, and testifying that she used her knowledge to decide where to put information on the Debtors' bankruptcy documents, exceeded the role of a BPP and was more akin to the role of an attorney. See § 110(e)(2)(B)(vi) & (vii)

(listing "how to characterize the nature of the debtor's interests in property or the debtor's debts" and advice about "bankruptcy procedures and rights" as legal advice that a BPP cannot offer); Evans, 413 B.R. at 327; Hennerman, 351 B.R. at 152 ("Virtually any exercise of discretion about what to include or not include in the bankruptcy documents, will touch upon a bankruptcy 'procedure' or 'right.' "), 154—55 ("Any representations by a preparer suggesting that the preparer can shepherd a debtor through the Chapter 13 process is indubitably 'fraudulent, unfair and deceptive.' "); Gomez, 259 B.R. at 386. Burton admitted that she prepared Wright's Reconsideration Motion and instructed Bodrick to file her Motion to Dismiss as well as what it should contain, and the preparation of a motion for another person is the work of an attorney, see N.C. GEN. STAT. § 84-4; Monson, 522 B.R. at 351 (concluding that a BPP's preparation of an application to waive the bankruptcy filing fee constituted legal advice); U.S. Trustee v. Burton (In re Rosario), 493 B.R. 292, 337 (Bankr. D. Mass. 2013) ("[T]here is no question that drafting motions or responses for debtors to be filed with the court constitutes the unauthorized practice of law.  Preparing motions or responses on a debtor's behalf requires the application of legal principles to a particular client's circumstances in order to secure or protect the clients' [sic] rights or benefits."); State v. Pledger, 127

18

S.E.2d 337, 339 (N.C. 1962) ("Practice of law embraces the preparation of legal documents and contracts by which legal rights are secured."). She offered to prepare other bankruptcy documents, such as motions to avoid liens, see Hennerman, 351 B.R. at 151—52 ("A plain meaning reading of [§ 110(e)(2)(B)(vii)] precludes advising debtors about . . . whether debtors might be able to avoid liens . . . ."), and reaffirmation agreements for Bodrick, see § 110(e)(2)(B)(v) (describing "whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt" as legal advice); Sanchez, 446 B.R. at 539. She said she prepared the Lawing letter containing legal argument and citations for Wright because she understood legal terms better than Wright, and people who understand legal terms and apply them to the facts of a particular case are engaged in the practice of law. See Monson, 522 B.R. at 355 (discussing state bar letter to BPP advising that BPP could not provide " 'specific advice related to another person's facts or circumstances' "). Burton told Wright that a Chapter 13 case could prevent an eviction. See § 110(e)(2)(B)(i)(II) (listing the question of "whether commencing a case under chapter 7, 11, 12, or 13 is appropriate" as legal advice); In re Webers, 322 B.R. 216, 222 (Bankr. M.D. Fla. 2005) ("The determination of which chapter a debtor elects is a decision that can only be

made by an attorney representing a debtor or a pro se filer."). Burton admitted that she designated a lease as a "910/365" claim in Wright's Chapter 13 plan, see Hennerman, 351 B.R. at 151 ("The preparation of [Chapter 13] plans necessarily requires legal analysis and judgment."), and said she, not Wright, decided where to list things on Wright's bankruptcy documents, see Rosario, 493 B.R. at 336 ("This rationale [against allowing BPPs to use questionnaires or worksheets] applies with equal force to the use of other sources, such as credit reports or 'discussions' with the client, to glean information used to prepare the debtor's petition.") (citation omitted); Gomez, 259 B.R. at 386 ("A petition preparer may not assist a debtor in determining what information should be included on such documents or offer any information or advice as to what the law is or how it applies to the debtor's circumstances."). She told Bodrick that her Statement of Intention would allow Bodrick to keep her house, and § 110(e)(2)(B)(iii) specifically lists "whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title" as legal advice that BPPs are not allowed to share with their clients. Monson, 522 B.R. at 353. In addition to generally ignoring the § 110 requirements for BPPs, Burton flagrantly violated the prohibitions against the practice of law by non-attorneys in the Bankruptcy Code and the North Carolina General

Statutes.

## SANCTIONS

17.  The court has not been able to locate a BPP in the relevant case law that violated the statutory requirements for BPPs more egregiously than Burton.  While some BPPs conducted business on a far wider scale than Burton did in the two cases before the court, see, e.g., Briones-Coroy, 481 B.R. at 691 (discussing a BPP's conduct in 241 cases); Moore I, 283 B.R. at 854 (discussing a local BPP who was a franchisee of a BPP corporation), the BPPs sanctioned by other courts usually have made some attempt to comply with the Bankruptcy Code but failed to adhere to the strict requirements of § 110, see, e.g., Monson, 522 B.R. at 350 (explaining why BPP's impression that he could provide debtors with a list of exemptions to choose from was incorrect).  Burton's conduct, in contrast, was completely contrary to the Bankruptcy Code, and it is difficult to find a part of § 110 with which she did comply.  If the court were so inclined, it might be able to sanction Burton in a record-setting amount.  For example, Burton could be fined up to $500 for each of her dozens of violations of § 110(b)—(h), § 110(l)(1), and the total fine pursuant to § 110(l)(1) would be tripled because Burton prepared documents without disclosing her involvement, § 110(l)(2)(D).[8]   Nevertheless, the court will

---

[8] Section 110(l)(2)(D) requires the fine under § 110(l)(1) to be tripled if a BPP files "a" document without disclosing his identity, so even one instance

decline to impose sanctions to the full extent allowed by § 110.[9]
See Briones-Coroy, 481 B.R. at 716—17 (considering reasonableness, deterrence, ability to pay, and other factors and concluding that fining a BPP for every individual violation was not a wise exercise of discretion).

18. The court will sanction Burton pursuant to § 110(h)(3)(B) and (i)(1). Section 110(h)(3)(B) allows for the forfeiture of all fees collected by a BPP in a case in which the BPP fails to comply with § 110(b), (c), (d), (e), (f), (g), or (h). Burton repeatedly violated the relevant subsections of § 110. Accordingly, Burton will forfeit the fees she charged to Wright ($584) and Bodrick ($400) to the respective trustee for each case. Section 110(i)(1) requires the court to order a BPP who violates § 110 or commits any fraudulent, unfair, or deceptive act to pay the debtor the amount of the debtor's actual damages, the greater of $2000 or twice the amount charged by the BPP, and reasonable attorney's fees. Burton's performance in this case violated almost the entirety of § 110, and "fraudulent, unfair, [and] deceptive" is an accurate description of her performance overall. The court did not hear any evidence of either Debtor's actual damages, and no attorneys appeared for either Debtor, so the court will sanction Burton in

---

of failing to disclose is penalized by tripling fines. The fact that every document that Burton filed in these cases fails to disclose her involvement is another indication of the egregiousness of her actions.
[9] Any additional violations of § 110 by Burton will be dealt with more harshly.

the amount of $2000, payable to each Debtor in care of the respective trustee, in each case.

19. Section 110(j) allows the court to enjoin a BPP from future violations of § 110 or from acting as a BPP in future cases. The court will enjoin Burton from any further violations of § 110, see Moore II, 290 B.R. at 291—93 (concluding that the court can enter injunctive relief pursuant to § 110 without an adversary proceeding), but will decline to bar Burton from serving as a BPP in any future cases at this time. If Burton violates § 110 after the entry of this order or if she fails to timely pay the sanctions required by this order, the court will enjoin her from ever again serving as a BPP in any bankruptcy case in the United States. See § 110(j)(2)(B) & (3); Briones-Coroy, 481 B.R. at 742 & n.332 (noting court's discretion to issue statewide, regionwide, or nationwide injunctions and collecting cases). This court will also refer any future misdeeds by Burton to the appropriate authorities for criminal proceedings.

## CONCLUSION

Section 110 of the Bankruptcy Code allows non-attorney bankruptcy petition preparers to assist debtors in very limited ways. Basically, a bankruptcy petition preparer is only allowed to type a debtor's petition and schedules and cannot advise a debtor about what to include or not include in the documents.

Katrina Burton flagrantly violated § 110 and engaged in the unauthorized practice of law in these cases by ignoring statutory requirements and greatly exceeding the proper role of a bankruptcy petition preparer. As a result, the court will fine Burton in a significant amount (but an amount that is far less than the amount permitted by law) and enjoin her from any further violations of § 110, including any unauthorized practice of law. If Burton does not pay the sanctions promptly and/or violates § 110 in the future, she will be enjoined from ever again serving as a bankruptcy petition preparer and/or referred to the proper authorities. The court will also require Burton to carefully review 11 U.S.C. § 110 and this order and certify that she understands the duties and the appropriate role of a bankruptcy petition preparer.

Accordingly, Katrina Burton is hereby **ORDERED TO PAY** the following sums in certified funds on or before **OCTOBER 3, 2016:**

> (1) **$400** to A. Burton Shuford, Chapter 7 Trustee, 4700 Lebanon Road, Suite #A-2, Mint Hill, North Carolina 28227;

> (2) **$584** to Warren L. Tadlock, Chapter 13 Trustee, 5970 Fairview Road, Suite 650, Charlotte, North Carolina 28210;

> (3) **$2000** to Tena Evans Bodrick, c/o A. Burton Shuford, Chapter 7 Trustee, 4700 Lebanon Road, Suite

#A-2, Mint Hill, North Carolina 28227; and

(4) **$2000** to Kimberly Wright, c/o Warren L. Tadlock, Chapter 13 Trustee, 5970 Fairview Road, Suite 650, Charlotte, North Carolina 28210.

In addition, Katrina Burton is hereby **PERMANENTLY ENJOINED** from any future violations of 11 U.S.C. § 110, and Burton is hereby **ORDERED TO CERTIFY** in writing that she has reviewed 11 U.S.C. § 110 and this order and that she understands the duties and the appropriate role of a bankruptcy petition preparer prior to serving as a bankruptcy petition preparer in any future cases.[10]   The court will hold a compliance hearing on this order at **1:30 P.M.** on **OCTOBER 11, 2016** at the Charles R. Jonas Federal Building, Courtroom 1-5, 401 West Trade Street, Charlotte, North Carolina 28202.

**SO ORDERED.**

This Order has been signed                    United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

---

[10] Burton should file her written certification in each of these cases.